UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER KARRES,

                Plaintiff,                Case No. 20-cv-10108

v.

                                      Paul D. Borman

ALLIED DEVELOPMENT COMPANY,     United States District Judge
LLC, a Michigan Limited Liability
Company, JOSEPH LAWRENCE KOTT,
and KATHLEEN EDITH KOTT,

                Defendants.

_____/

**<u>OPINION AND ORDER GRANTING DEFENDANTS'</u>**
**<u>MOTION FOR SUMMARY JUDGMENT (ECF NO. 23)</u>**

In this premises liability action, Plaintiff Jennifer Karres, presently a resident of the State of Virginia, claims that she sustained injuries when she tripped and fell down the stairs when she was exiting the upstairs apartment she rented from Defendant Allied Development Company, LLC. She brings this suit against Defendant Allied and the alleged owners of the property, Defendants Joseph Kott and Kathleen Kott. Now before the Court is Defendants' Motion for Summary Judgment seeking dismissal of Plaintiff's premises liability claim, which has been fully briefed. The Court held a hearing on Defendants' motion on Friday, April 29, 2022. For the reasons that follow, Defendants' motion for summary judgment is

1

GRANTED and Plaintiff's premises liability claim is DISMISSED WITH PREJUDICE.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

In June 2011, Plaintiff Jennifer Karres leased the upstairs unit of a house located at 186 E. Liberty, Plymouth, Michigan, from lessee Defendant Allied Development Company, LLC ("Allied"). (ECF No. 23-5, Lease Agreement, PageID.322-25.) Defendant Joseph Kott signed the lease agreement on behalf of the lessee, and he is the registered agent and member of Allied. (*Id.* PageID.325) (ECF No. 23-4, LARA – Corporate Online Filing System, PageID.320.) Defendant Kathleen Kott is Joseph Kott's wife, and Plaintiff alleges that Joseph and Kathleen Kott were the fee simple title owners of the subject property during the relevant time period, and that they together "own[ed], manage[d], control[led] and offer[ed] for rent the premises located at 186 East Liberty Street." (ECF No. 11, Pl.'s Second Amended Complaint (SAC) ¶¶ 3, 4) (ECF No. 25, Pl.'s Resp. at PageID.371, citing ECF No. 25-2, 2003 Quit-Claim Deed, PageID.381.)

The upstairs unit that Plaintiff rented was equipped with an exterior, free-standing staircase that led directly to Plaintiff's unit only and was not shared with any other tenants. (ECF No. 23-3, Deposition of Plaintiff Jennifer Karres (Karres

2

Dep.) at p. 22, PageID.278.) The stairs were the only access to Plaintiff's unit. (ECF No. 25-4, Deposition of Defendant Joseph Kott (J. Kott Dep.) at p. 21, PageID.405.) Plaintiff testified that the staircase was "old," "unstable," and "shaky," and that "different steps were uneven," since she moved into the unit in June 2011. (Karres Dep. at pp. 24-25, PageID.279-80.)[1] She described the stairs as "super smooth," "very old," and "very weathered." (*Id.* at pp. 29, 56, PageID.284, 311.) However, Plaintiff testified that she used the stairs daily since she moved into the apartment in 2011 and that that she had never fallen or otherwise had a similar issue with the stairs prior to the January 23, 2017 incident. (*Id.*)

Plaintiff testified that, prior to her fall, she had verbally complained to Defendants' assistant "Janet" (later identified by Mr. Kott as his secretary Janet Yuchaz) while paying rent that "there was something wrong with the steps," and that she had also pointed out her issues with the stairs to maintenance workers who were on the property. (Karres Dep. at p. 27, PageID.282.) Plaintiff however never reported

---

[1] Plaintiff testified in her deposition that she lived in the unit for about two years before the subject incident occurred. (Karres Dep. at p. 25.) However, the Lease Agreement she signed was entered on June 1, 2011 (Lease Agreement, PageID.322), indicating that Plaintiff lived in the unit for about five and a half years before the incident occurred. (See also Pl.'s Resp. at PageID.371 ("In June, 2011, Plaintiff leased the upper flat….").)

any issues with the stairs directly to either Joseph Kott or Kathleen Kott. (*Id.* at p. 28, PageID.283.)

On Monday January 23, 2017, Plaintiff was at home all day "just hanging out." (Karres Dep. at p. 29, PageID.284.) At approximately 6:00 p.m., Plaintiff left her apartment to retrieve her mail. (*Id.* at p. 26, PageID.281.) She testified that "it was drizzling, and unseasonably warm" that day, and that the ground and stairs were wet/damp. (*Id.* at p. 30, PageID.285.) She stated that it was dark when she left the apartment and that the light over the stairway was out, but that solar lights on the stairway posts were on. (*Id.* at p. 31, pageID.286.) As she got near the bottom of the staircase, to about the third step from the bottom, Plaintiff fell. (*Id.* at pp. 26-27.) She testified:

> I just came down and went to step on that step, and just – it wasn't there because of the slant of it. And I went down hard and hit the next step, and my leg just snapped when it hit that next step. And I landed on the cement, smacked my head, and laid there for about a half-hour until some kids in the neighborhood heard me screaming so – and that's when they came and called 911.

(Karres Dep. at p. 31, PageID.286.)

Plaintiff further testified regarding the cause of her fall:

Q.    Okay. So you had made it almost all the way down, and were on the third step with two more steps to go; is that accurate?

A.    Yes.

4

Q.   Had you ever noticed that particular step to be in a state of disrepair before this incident:

A.   Yes.

Q.   And what was wrong with it?

A.   It was uneven.

Q.   *It that what caused the fall, that it was uneven?*

A.   *I don't know what caused the fall. That's the step I believe that, you know, I missed, or that caused me to fall.*

(Karres Dep. at pp. 26-27, PageID.281-82 (emphases added); *see also id.* at p. 32, PageID.287 ("I believe it to be – I mean, the steps were – all the steps were – that is my thought that because of the unevenness. It was blatantly uneven.").) She testified that she believes the step was "slanted" left to right – the left side being higher. (*Id.* at pp. 56-57, PageID.311-12.)

Plaintiff initially provided varying causes of her fall down the stairs to her doctors. When she was first treated after her fall, she reported to her doctors that "her r[ight] knee gave out on her which caused her to fall." (ECF No. 23-6, St. Mary's Hospital Discharge Summary, PageID.327; ECF No. 23-7, Social Security Disability pages, PageID.329-33.) Plaintiff similarly reported to doctors in conjunction with her applications for Social Security disability benefits, that she fell

in January 2017 because "her right knee gave out[,]" or "due to the knee popping out[.]" (Social Security Disability pages at PageID.331-32 (Plaintiff reporting "I keep falling.").)

Plaintiff had previously injured her right knee approximately 40 years ago, resulting in surgery and the placement of hardware in her right knee. (*Id.* PageID.330; Karres Dep. at p. 19, PageID.275.) Plaintiff testified that she injured her right knee again in either 2014 or 2016, when she slipped on some water on the floor at work and fell, and she broke her wrist and again injured her right knee. (Karres Dep. at pp. 9-10, PageID.265-66.)[2]

As a result of her fall down the home steps on January 23, 2017, Plaintiff sustained a fractured right proximal fibula, and fractured right tibial plateau, requiring surgery to install a rod and supporting screws. (Karres Dep. at p. 36, PageID.291; St. Mary's Hospital discharge summary, PageID.327.)

### B.    Procedural History

On January 15, 2020, Plaintiff Jennifer Karres filed a Complaint in this case alleging one count of premises liability against Defendants Allied, Joseph Kott, and Kathleen Kott. (ECF No. 1, Complaint.) Plaintiff filed an amended (corrected)

---

[2] Plaintiff testified that she filed a workers compensation claim for this second injury and received a $50,000 settlement. (Karres Dep. at p. 44, PageID.299.)

complaint (in the correct-sized font, as ordered by the Court) on January 21, 2020 (ECF No. 4, FAC), and then filed a second amended complaint, with leave of Court, on March 12, 2020, fully identifying the citizenship of all parties and again alleging the single count of premises liability against all Defendants. (ECF No. 11, SAC.)

On January 5, 2022, Defendants filed a Motion for Summary Judgment, arguing that Plaintiff's claims against all Defendants should be dismissed. (ECF No. 23, Defs.' Mot.) Defendants argue that Plaintiff's premises liability claim fails because she relies on impermissible speculation and conjecture regarding the cause of her fall. Defendants further contend that Plaintiff's premises liability claim is barred by the open and obvious danger doctrine, and that there are no special aspects that would provide an exception to this bar. Defendants further argue that Joseph and Kathleen Kott, as individuals, are entitled to summary judgment because they are not the owners of the subject premises and they cannot be held individually liable for the acts of an LLC.

Plaintiff filed a response in opposition to Defendants' motion on February 26, 2022. (ECF No. 25, Pl.'s Resp.) Plaintiff argues that she has provided sufficient evidence, through her deposition testimony, regarding what caused her fall – an uneven step and burned-out lighting – to survive summary judgment. She further contends that she has presented evidence of the special aspects of the stairs – namely,

that they provide the only access to her apartment – that negate the open and obvious bar. Finally, Plaintiff contends that Defendants Kathleen and Joseph Kott are the fee simple owners of the property and thus are proper defendants.

On March 11, 2022, Defendants filed a reply brief. Defendants contend that Plaintiff's premises liability claim fails because she cannot establish causation as she has offered several shifting possible explanations for her fall. Defendants further argue that Plaintiff does not dispute that the alleged danger of the steps was open and obvious, and she cannot establish the existence of special aspects that would preclude application of the open and obvious defense. Finally, Defendants contend that, at most, Joseph Kott may be a fee simple owner of the subject property, but that Kathleen Kott is not and should be dismissed as an individual defendant.

## II. LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute

is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff."

*Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). That evidence must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

## III.  ANALYSIS

Because this Court sits in diversity jurisdiction, the substantive law of Michigan governs the claims of in this case. *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012).

### A.    Michigan Premises Liability Law

In Michigan, premises liability flows from the ownership, possession, or control of the land at issue. *Laier v. Kitchen*, 266 Mich. App. 482, 493 (2005). To succeed in a premises liability action, a plaintiff must prove: (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the defendant's breach caused the plaintiff's harm; and, (4) that the plaintiff suffered damages. *Hunley v. DuPont Auto.*, 341 F.3d 491, 496 (6th Cir. 2003).

For the purposes of premises liability, the landowner's duty depends on the status of the injured party. *Taylor v. Laban*, 241 Mich. App. 449, 425 (2000) (*citing Doran v. Combs*, 135 Mich. App. 492, 495 (1984)). Michigan utilizes three categories of status: invitees, licensees, and trespassers. *Kessler v. Visteon Corp.*, 448 F.3d 326, 336-37 (6th Cir. 2006). An invitee is an individual who enters the land of another for a commercial purpose. *Cote v. Lowe's Home Ctr., Inc.*, 896 F. Supp. 2d 637, 644 (E.D. Mich. 2012).

The parties agree that Plaintiff was an invitee on the Defendants' premises at the time of her fall. *See Woodbury v. Bruckner (On Remand)*, 248 Mich. App. 684, 691 (2001) (explaining that a tenant on his landlord's property falls into the category of invitee). A "premises possessor owes [a] business invitee [a] duty to exercise reasonable care to protect her from [an] unreasonable risk of harm caused by [a] dangerous condition on the land." *Hollerbach v. Target Corp.*, 443 F. App'x 936, 938 (6th Cir. 2011) (citing *Banks v. Exxon Mobil Corp.*, 477 Mich. 983 (2007)) (alterations added). Nonetheless, "landowners are not insurers; that is, they are not charged with guaranteeing the safety of every person who comes onto their land," but instead only owe a duty "to exercise reasonable care for their protection." *Hoffner v. Lactoe*, 492 Mich. 450, 459 (2012). "Perfection is neither practicable nor required by the law, and '[u]nder ordinary circumstances, the overriding public

11

policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary [conditions] 'foolproof.'''" *Id*. at 460 (quoting *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 616-17 (1995)).

> As the Michigan Supreme Court has explained:
>
> Underlying all these principles and rules is the requirement that both the possessors of land and those who come onto it exercise common sense and prudent judgment when confronting hazards on the land. These rules balance a possessor's ability to exercise control over the premises with the invitee's obligation to assume personal responsibility to protect themselves from apparent dangers.

*Hoffner*, 492 Mich. at 459-60. A landowner breaches its duty to an invitee, and therefore is liable for any harm caused, "when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Id.* (citing *Bertrand*, 449 Mich. at 609.)

Defendants argue that Plaintiff's premise liability claim against them fails because (1) Plaintiff does not know what caused her fall, and thus the Court or a jury would be required to engage in improper speculation and conjecture as to causation, and (2) if the steps presented a danger, that danger was open and obvious to a reasonable person upon casual inspection. Defendants further argue that, at the very

least, defendants Joseph Kott and Kathleen Kott, as individuals, are entitled to summary judgment because Defendant Allied owns and leases the subject property, and the Kotts do not own or lease that property in their individual capacities.

### B.    Whether Plaintiff Can Establish Causation

Defendants first challenge Plaintiff's premises liability claim on the ground that Plaintiff cannot identify the cause of her fall, and that she instead improperly relies on speculation or conjecture as to why she fell. In support of this argument, Defendants point out that Plaintiff first told the doctors who treated her for the fall that her knee gave out and she fell down the stairs. She then testified initially in her deposition that she did not know what caused her to fall, and then later speculated that an "uneven" step caused her to fall, and further stated that she simply "missed" the step. (Defs.' Mot. at pp. 14-15, PageID.239-40.) Defendants contend that, on this record, Plaintiff is forced to rely on bare speculation or conjecture to establish the requisite causal connection between her fall and an alleged hazardous condition on Defendants' property, and they point to case law holding that "[s]uch speculation or conjecture is insufficient to raise a genuine issue of material fact" as to the cause of a plaintiff's injury. (*Id.*)

In Response, Plaintiff asserts she "need only provide proof of 'a reasonable likelihood of probability' that [her] explanation of the injury is correct," and

13

contends that "the record is replete with direct descriptions of how this incident occurred, and what led to [Plaintiff's] fall," and that "[w]hile some of the references to her knee giving way can be found in the smattering of records provided by the defense, these records are not inconsistent with [Plaintiff's] version of what happened on January 23, 2017, and certainly are not contradictory." (Pl.'s Resp. at PageID.374.) Plaintiff does not otherwise cite to any record evidence or any caselaw in support of her argument, or attempt to distinguish Defendants' cited caselaw.[3]

With respect to proximate causation in the premises liability context, Michigan case law holds the following:

> "'Proximate cause' is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause." *Craig v. Oakwood Hosp.*, 471 Mich. 67, 86, 684 N.W.2d 296 (2004). Causation in fact requires a but-for standard. *Wilkinson v. Lee*, 463 Mich. 388, 396-397, 617 N.W.2d 305 (2000). In other words, it requires a showing that, but for the negligent conduct, the injury would not have occurred. *Wiley v. Henry Ford Cottage Hosp.*, 257 Mich. App. 488, 496, 668 N.W.2d 402 (2003).

---

[3] Courts routinely decline to consider perfunctory, undeveloped arguments of the sort made by Plaintiff here. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (holding that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293 (1st Cir. 1995)); *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). It is not enough for a party to "mention a possible argument in the most skeletal way" and leave the court to "put flesh on its bones." *McPherson*, 125 F.3d at 995-96 (quoting *Citizens Awareness Network*, 59 F.3d at 293-94). It is Plaintiff's burden to establish causation to support her premises liability claim, not Defendants' burden to disprove it. *See Skinner v. Square D. Co.*, 445 Mich. 153 (1994).

14

> Proximate cause "normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Skinner v. Square D Co.*, 445 Mich. 153, 163, 516 N.W.2d 475 (1994). Cause in fact requires more than a possibility of causation; while the evidence need not negate all other possible causes, it must exclude other reasonable hypotheses with a fair amount of certainty. *Craig*, supra at 87-88, 684 N.W.2d 296.

*Campbell v. Kovich*, 273 Mich. App. 227, 232-33 (2006).

Although causation is sometimes a jury question, the district court may decide causation as a matter of law if the plaintiff presents insufficient evidence to "support a reasonable inference" of causation. *See Demo v. Red Roof Inns, Inc.*, 274 F. App'x 477, 478 (6th Cir. 2014) (citing *Weymers v. Khera,* 454 Mich. 639, 648 (1997) ("A mere possibility of ... causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.") (internal quotation marks omitted); *Nicholson by Nicholson v. Children's Hosp. of Mich.,* 139 Mich. App. 434, 438 (1984)).

Michigan law holds that a plaintiff cannot satisfy the burden of drawing "a reasonable inference of causation" by merely speculating that the defendant may have caused a plaintiff's injuries. *Drews v. American Airlines, Inc.*, 68 F. Supp. 3d 734, 742 (E.D. Mich. 2014); *Kassab v. Target Corp.*, No. 16-12788, 2017 WL 2880086 at *4 (E.D. Mich. July 6, 2017) ("Michigan courts have held that a premises

15

liability claim cannot rest upon bare speculation as to the cause of the plaintiff's injury.").

> [A]t a minimum, a causation theory must have some basis in established fact. However, a basis in only slight evidence is not enough. Nor is it sufficient to submit a causation theory that, while factually supported, is, at best, just as possible as another theory. Rather, the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred.

*Skinner*, 445 Mich. at 164-65. Moreover, "[t]he mere occurrence of plaintiff's fall is not enough to raise an inference of negligence on the part of the defendant." *Drews*, 68 F. Supp. 3d at 742 (quoting *Stefan v. White,* 76 Mich. App. 654 (1977)).

Defendants cite to a number of published and unpublished Michigan state court cases applying Michigan premises liability law and finding that the plaintiffs' claims failed because they presented only speculative or conjectural theories of causation. *See Stefan,* 76 Mich. App. 654 (finding no causation where plaintiff testified she did not know why or how she fell, even though her husband provided testimony that he saw a metal strip protruding from the edge of the kitchen floor); *Pete v. Iron Co.*, 192 Mich. App. 687 (1991) (finding no causation where plaintiff offered multiple possible reasons for her fall down stairs, and her expert opined that plaintiff may have "misstepped"); *Troupe v. Interurban Transit P'ship*, No. 265563, 2006 WL 709210 (Mich. Ct. App. Mar. 21, 2006) (finding no causation where

plaintiff states she tripped because "her foot got caught on something" and the following day she saw a fallen bus stop sign in the area and surmised that she had tripped over the sign); *Williams v. City of Royal Oak*, No. 211671, 2000 WL 33403001 (Mich. Ct. App. Nov. 3, 2000) (no causal connections between plaintiff's fall and a hole in a tree grate where plaintiff only discovered the hole in the grate days after her fall and she testified in her deposition that she fell because of her heeled shoes); *Harris v. Cars & Concepts, Inc.*, No. 188911, 1996 WL 33347654 (Mich. Ct. App. Dec. 17, 1996) (no causation because plaintiff has not submitted evidence from which a jury could conclude that it was more likely than not that he would not have fallen absent the oil on defendant's premises where he testified that he could have stepped in oil, and also stated that he lost his balance due to a shift in his weight); *Dupont v. Morrison Lake Resort Ass'n*, No. 236819, 2002 WL 31958187 (Mich. Ct. App. Dec. 27, 2002) (no causation where plaintiff testified that she did not know why or how she fell); *Cooper v. MGM Grand Detroit, LLC*, No. 278320, 2008 WL 4149992, (Mich. Ct. App. Sept. 9, 2008) (no causation where plaintiff could not identify cause of her trip and fall, even though other patrons opined that the floor mat was the cause of her fall).

In *Kassab v. Target Corporation*, No. 16-12788, 2017 WL 2880086 (E.D. Mich. July 6, 2017), the plaintiff fell in an aisle of a Target store. *Id.* at *1. The

17

plaintiff and others with him during the accident suggested that he slipped because the floor was wet after just having been waxed. *Id.* at *5. The court found that the plaintiff could not show causation as a matter of law, however, as the "[p]laintiff testified that he felt his foot slip as he fell, but he admitted that he had 'no idea' what his foot might have slipped on or what caused him to fall." *Id.* at *3. The court reasoned that these allegations were too general to necessitate a finding by a jury. *Id.* at *5. The court further found that the plaintiff's and his companions' "after-the-fact observations that the floor near the store entrance felt 'a little slippery' or seemed 'sticky' as though it had 'just [been] waxed'" were insufficient to establish causation. *Id.* (internal citation omitted).

In *Demo v. Red Roof Inns, Inc.,* 274 F. App'x 477 (6th Cir. 2008)*,* the plaintiff testified that he "just took off falling" down a flight of stairs. *Id.* at 479. He "later surmised 'it was a sheet of ice there,'" but "conceded that 'no one can actually say' what had caused him to fall." *Id.* at 478-79. The court found that the plaintiff's speculative deposition testimony about what caused his fall, and an accident report the plaintiff filed citing wet and icy stairs, were insufficient to establish a genuine question of fact as to causation. *Id*.

While Plaintiff here alleges in her Second Amended Complaint that she fell "due to uneven, inconsistent and incorrectly sized steps and lighting insufficient to

illuminate those steps," she provided equivocal testimony in her deposition regarding the cause of her fall, testifying that:

- "[a]fter the fall," she "*believe[d]*" she fell from the third step from the bottom (Karres Dep. at p. 26, PageID.281 (emphasis added));

- That she "*do[es]n't know* what caused the fall. That's the step I *believe that* you know, that *I missed*, **or** *that caused me to fall*" (*Id.* at p. 27, PageID.282 (emphasis added));

- "I just came down and went to step on that step, and just – it wasn't there because of the slant of it." (*Id.* at p. 31, PageID.286);

- "I *believe* it to be – I mean, the steps were – all the steps were – that is my *thought* that because of the unevenness. It was blatantly uneven." (*Id.* at p. 32, PageID.287 (emphasis added).)

This equivocal deposition testimony is further weakened by Plaintiff's statements to the medical providers who treated her following the fall that she fell because her knee gave out. (St. Mary Hosp., PageID.327; Social Security Disability pages, PageID.329-33.) She does not mention her fall being caused by a condition of the stairs in any of those records. (*See id.*) *See Estate of Meredith by Meredith v. BRT Props., LLC*, No. 339045, 2018 WL 2419065, at *4 (Mich. Ct. App. May 29, 2018) (finding the plaintiff failed to establish causation where he stated in sworn

19

interrogatories that he fell down a staircase because he was struck by a piece of hanging wall art (and plaintiff died before he could be deposed), but he told medical providers and other people that he "trip[ped] over his own feet" while descending the stairs and brushed up against the art work on the wall which fell on him).

The Michigan Supreme Court has emphasized that a plaintiff must do more than "submit a causation theory that, while factually supported is, at best, just as possible as another theory." *Skinner,* 445 Mich. at 164. Instead, the plaintiff must submit "substantial evidence" from which a jury could conclude that it is "*more likely than not*" the plaintiff's injuries would not have occurred absent the defendants' conduct. *Id.* at 164-165. A mere possibility of such causation is not sufficient; and when the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict in favor of the defendant. *Id.*

This case presents a close call on causation. Plaintiff's speculative testimony (I "believe," I "thought"), and contradictory statements offering differing theories as to why she fell (uneven step, missed the step, knee gave out, "I don't know"), appear insufficient for the factfinder to reasonably conclude that it is "more likely than not" that Plaintiff's injuries would not have occurred absent the Defendants' conduct, without engaging in inappropriate speculation. *See Skinner*, 445 Mich. at 164-65;

*Estate of Meredith*, *supra*, *Kassab*, *supra*; *Demo*, *supra*; *Estate of William Butler,*
*Sr. v. Janssens*, No. 334888, 2017 WL 6598172, at *2 (Mich. Ct. App. Dec. 26,
2017) (finding no causation because "[w]hile plaintiff offers multiple theories of
causation, at best these theories are inconsistent and speculative in nature"). *But see*
*Bodrie v. Speedway, LLC*, No. 18-12344, 2019 WL 7584398, at *7 (E.D. Mich. Oct.
30, 2019) (although plaintiff's testimony as to the cause of his fall "impermissibly
rests upon mere speculation and conjecture," circumstantial evidence in the record
supports his claim that he slipped and fell on ice); *Taylor v. Petsmart, Inc.*, No. 17-
cv-10151, 2018 WL 398445, at *3-4 (E.D. Mich. Jan. 12, 2018) (although plaintiff
testified that she is unaware of why she slipped on the floor, evidence in the record
(an incident report filed by the store manager) suggests that "a strip of water on the
floor" caused the incident, and thus created a jury question as to causation).

However, even if, construing the evidence in the light most favorable to
Plaintiff, her deposition testimony is found to be sufficient, even if just barely, to
create a jury issue as to causation, the Court finds that Plaintiff's premises liability
claim is barred by the open and obvious doctrine, for the reasons that follow.

## C.   Open and Obvious Doctrine and the Special Aspects Exception

Defendants argue that even if Plaintiff could establish causation in this case,
and even if the stairs to Plaintiff's unit presented a danger, that danger was open and

21

obvious to a reasonable person upon casual inspection, and Defendants do not owe a duty to protect against or warn of open and obvious dangers. (Defs.' Mot. at pp. 15-19, PageID.240-44.)

The open and obvious doctrine is "an integral part of the definition of [the] duty that an invitor owes to its invitee." *Matteson v. Northwest Airlines, Inc.*, 495 F. App'x 689, 691 (6th Cir. 2012). The premises owner's duty to invitees does not include a duty to protect them from "open and obvious" dangers. *Id*. at 691 (quoting *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516 (2001)). "Put simply, [the open and obvious doctrine] means that an invitor has no duty to protect its invitee from an open and obvious danger, unless that danger has special aspects that make it particularly likely to cause harm." *Id.* The rationale for the doctrine is that "there should be no liability for failing to warn someone of a risk or hazard [that] he appreciated to the same extent as a warning would have provided." *Glittenberg v. Doughboy Recreational Indus., Inc.*, 436 Mich. 673, 683-84 (1990) (quotation marks and citation omitted).

This is an objective standard, and a hazard is open and obvious if "an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon causal inspection." *Hoffner*, 492 Mich. at 461. The Court considers whether "it is reasonable to expect that the invitee would discover the

danger[.]" *Novotney v. Burger King Corp.*, 198 Mich. App. 470, 475 (1993). "If reasonable minds could differ on the question of whether a condition is open and obvious, the decision must be left to the jury." *Mousa v. Wal-Mart Stores E., L.P.*, No. 11-14522, 2013 WL 5352949, at *5 (E.D. Mich. Sept. 23, 2013) (*citing Vella v. Hyatt Corp.*, 166 F. Supp. 2d 1193, 1198 (E.D. Mich. 2001)).

### 1.    The condition of the steps was open and obvious

In this case, Plaintiff testified that she knew of the condition of the stairs – uneven steps, shaky staircase – and that this same condition existed the entire five and one-half years she lived at the apartment. (Karres Dep. at pp. 24-25, 56-57, PageID.279-80, 311-12.) She testified she was "always cautious" when using the stairs and "had never fell on them." (*Id.* at p. 25, PageID.280.) Plaintiff further expressly concedes in her Response brief that she "was aware of the hazard associated with the decrepit stairs." (Pl.'s Resp. at PageID.372.)

In short, it is undisputed that Plaintiff knew of the allegedly hazardous or dangerous condition of the steps. Michigan courts have found hazardous conditions associated with steps to be open and obvious when a reasonable plaintiff, in fact, notes the condition and the danger it represents. *See Martin v. Fourmidable Grp., Inc.*, No. 299701, 2011 WL 6268197, at *3 (Mich. Ct. App. Dec. 15, 2011) (finding danger open and obvious because plaintiff admitted she was aware of the broken tile

on the top of the steps and decided to use the steps in any event); *Corey v. Davenport Coll. Of Bus. (on remand)*, 251 Mich. App. 1, 5 (2002) (danger was open and obvious when plaintiff saw and recognized that the steps were "snowy and icy," yet decided to use them anyway).

Plaintiff offers no argument in her Response brief that the condition of the stairs was not open and obvious, and instead focuses her Response solely on her argument that special aspects were present which removed the open and obvious bar.

Accordingly, the Court finds that the alleged hazard Plaintiff complains of, the condition of the stairway, was open and obvious. She admittedly knew, and under the circumstances, "an average user with ordinary intelligence [would] have been able to discover," the condition of the steps and the risk they presented. *Joyce v. Rubin*, 249 Mich. App. 231, 239 (2002) (citation omitted).

## 2. The limited special aspects exception

Plaintiff argues that, even if the hazard she complains of was open and obvious, special aspects of this open and obvious hazard give rise to liability. (Pls.' Resp. at PageID.376.)

Under Michigan law, in some narrow circumstances, "the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee." *Lugo*, 464 Mich. at 516-17. Michigan courts have recognized that this is a

"limited exception to the circumscribed duty [typically] owed for open and obvious hazards." *Hoffner*, 492 Mich. at 461. Specifically, "liability may arise when *special aspects* of a condition make even an open and obvious risk unreasonable." *Id.* (emphasis in original). Thus, if a hazard poses an unreasonably high risk of harm, despite its obviousness or an invitee's knowledge of its existence, "a premises possessor must take reasonable steps to protect an invitee from that *unreasonable* risk of harm." *Id.* at 461 (footnote with citations omitted).

The Michigan Supreme Court in *Hoffner* emphasized the "narrow nature of the 'special aspects' exception," stressing that "liability may be imposed only for an 'unusual' open and obvious condition that is 'unreasonably dangerous' because it 'present[s] an extremely high risk of severe harm to an invitee' in circumstances where there is 'no sensible reason for such an inordinate risk of severe harm to be presented.'" *Hoffner*, 492 Mich. at 462. Such "special aspects" exist only where a hazard poses a "uniquely high likelihood of harm or severity of harm if the risk is not avoided." *Lugo,* 464 Mich. at 519.

The Michigan Supreme Court has discussed two instances in which the special aspects of an open and obvious hazard may give rise to liability: when the hazard is (1) unreasonably dangerous or (2) effectively unavoidable. *Hoffner*, 492 Mich. at 463 (citing *Lugo*, 464 Mich. at 519). A hazard is deemed unreasonably dangerous

when it poses "an unreasonably high risk of severe harm." *Lugo,* 464 Mich. at 519. "[T]he standard for 'effective unavoidability' is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard," without any true choice in the matter. *Hoffner,* 492 Mich. at 468-69 (emphasis in original).

In *Lugo,* the Michigan Supreme Court provided examples of hazardous conditions that would be deemed unreasonably dangerous or effectively unavoidable. To illustrate the former, the court posited an "unguarded thirty foot deep pit in the middle of a parking lot." *Lugo,* 464 Mich. at 518-19. Although this condition "might well be open and obvious, and one would likely be capable of avoiding the danger," the court explained that "this situation would present such a substantial risk of death or severe injury to one who fell in the pit that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken." *Id*. (footnote omitted). As for an effectively unavoidable hazard, the court cited the example of "a commercial building with only one exit for the general public where the floor is covered with standing water." *Id.* The court again recognized that this condition would be "open and obvious," but reasoned that "a customer wishing to exit the store must leave the store through the water," thus rendering this hazard "effectively unavoidable." *Id.*

Defendants argue that Plaintiffs cannot show that the condition of the steps to her apartment had a "special aspect." (Defs.' Mot. at pp. 17-19, PageID.242-44.) Defendants contend that Plaintiff admits she was well aware of the condition of the steps, and that the steps do not qualify as unreasonably dangerous or effectively unavoidable under the limited special aspects exception. (*Id.*)

In her Response brief, Plaintiff recites general Michigan law regarding the open and obvious doctrine and special aspects exception, and then argues:

> In the case at bar, the only access to Ms. Karres' home was the decrepit exterior stair. Exposed to the elements, and without maintenance for at least 15 years, the stair had uneven, unlevel treads. This scenario presents precisely the risk, or the special aspect contemplated by *Lugo*.

(Pl.'s Resp. at PageID.376.) Plaintiff does not further explain how the facts of this case fit within the special aspects exception, or make any attempt to directly respond to Defendants' arguments in their motion or to distinguish the caselaw relied upon by Defendants. [4]

### a.   The steps are not unreasonably dangerous

The Court finds that Plaintiff fails to show that the steps at issue are "unreasonably dangerous."

---

[4] As noted in footnote 3 *supra*, courts routinely decline to consider perfunctory, undeveloped arguments of the sort made by Plaintiff here.

First, while Plaintiff alleges in her Second Amended Complaint that she "fell down the stairs due to uneven, inconsistent and incorrectly sized steps *and lighting insufficient to illuminate those steps*" (SAC ¶ 9 (emphasis added)), Plaintiff does not argue in her Response brief that the lighting on the stairs presents a special aspect, and thus could be found to have waived that contention. *See Sault St. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1988) (failure to address an issue constitutes a waiver or abandonment of the argument); *see also Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012) (issues raised in a perfunctory manner are deemed waived); *McPherson*, 125 F.3d at 995-96. Plaintiff's counsel similarly did not argue at the hearing on Defendant's motion that the lighting presented a special aspect.

In any event, to the extent Plaintiff did assert that the lighting on the stairs was unreasonably dangerous, such a claim fails. Plaintiff admits that she knew the light over the stairway was out when she left her apartment to retrieve her mail, and hints that it might have been out before that night. (Karres Dep. at p. 31, PageID.286.) She further admits that the solar lights on the stairway were on/illuminated, and does not argue that these lights were insufficient for some reason. (*Id.*) Plaintiff has failed to present any evidence that there was anything unusual about the alleged inadequate lighting on the stairs to fit within the narrow special aspects exception to the open

and obvious doctrine. Plaintiff was well familiar with the steps, having traversed them for almost six years, and she chose to descend the steps well aware of the lighting condition. *See Singerman v. Mun. Serv. Bureau, Inc.*, 455 Mich. 135, 144 (1997) (finding that there was nothing unusual about the inadequate lighting in the hockey rink to bring the open and obvious condition with the special aspects exception); *Pincomb v. Diversified Inv. Ventures, LLC*, No. 324989, 2016 WL 620432, at *5 (Mich. Ct. App. Feb. 16, 2016) (finding that lack of illumination and uneven pavement were open and obvious and did not pose an unreasonable risk of harm where "plaintiff expressly recognized that the area was dark and not well lit" and "[n]evertheless … made a conscious choice" to proceed and "[t]here were no allegations or evidence indicating that the amount of light changed").

Second, as for the steps themselves, Michigan law recognizes that steps or differing floor heights are such common occurrences that they generally are not unreasonably dangerous and do not give rise to premises liability. *Bertrand*, 449 Mich. at 614 ("[T]he general rule [has] emerged that steps and differing floor levels [a]re not ordinarily actionable unless unique circumstances surrounding the area in issue made the situation unreasonably dangerous.").The Michigan Supreme Court goes on to explain that

29

> because steps are the type of everyday occurrence that people
> encounter, under most circumstances, a reasonably prudent person will
> look where he is going, will observe the steps, and will take appropriate
> care for his own safety. Under ordinary circumstances, the overriding
> policy of encouraging people to take reasonable care for their own
> safety precludes imposing a duty on the possessor of land to make
> ordinary steps "foolproof."

*Bertrand*, 449 Mich. at 616-17. Therefore, falls involving steps give rise to a premises liability claim only where there is something unusual about the character, location, or surrounding conditions of the steps that create an unreasonable risk of harm, despite the invitee's knowledge of their condition. *Id.* at 613.

In *Bardeleben v. Millikin*, No. 343341, 2019 WL 2146512 (Mich. Ct. App. May 16, 2019), the plaintiff suffered injuries from falling on defendant's indoor staircase, and she contends that the staircase's tread depth variation caused the fall. Specifically, the first five stairs from the bottom of the staircase were "winder" stairs, meaning that the treads on those steps had nonparallel edges and were narrower on the inside of the stairs near the railing than the outside of the stairs near the wall. *Id.* at *1. The remaining steps were straight, non-winder steps. *Id.* The court found that the condition of the stairs was open and obvious, and that the variations in the steps' tread depths was not unreasonably dangerous because "[f]alling down five steps does not pose a risk of severe harm," and thus the open and obvious doctrine barred plaintiff's premises liability claim. *Id.* at *4. *See also Martin v. Milham Meadows I*

30

*Ltd. P'ship*, No. 328240, 2016 WL 10733305, at *9 (Mich. Ct. App. July 19, 2016) (finding that while stairs to the basement were "slippery and of irregular construction, the danger posed by the stairwell" in no way renders the staircase unreasonably dangerous, noting "[n]o stairs were broken, no nails jutting out, and no boards loose," and that the condition of the stairs was well known to the plaintiff, who had lived in the residence for over three years and traversed the stairs frequently, working out six days each week in his basement).

In *Estate of Meredith by Meredith v. BRT Properties LLC*, No. 339045, 2018 WL 2419065 (Mich. Ct. App. May 29, 2018), the court found that the plaintiff's argument that the absence of a graspable handrail rendered the staircase unreasonably dangerous was "without merit" because the plaintiff "successfully descended the staircase for seven years without having any issues. The staircase was not defective and was not dangerous to invitees who were paying attention to where they were walking." *Id.* at *3 (citing *Kroll v. Katz*, 374 Mich. 364, 373 (1965) (concluding that the mere existence of a defect or danger is not enough to establish liability)).

In light of these uniform rulings under circumstances similar to those presented here, the Court concludes that the alleged hazardous condition faced by Plaintiff in this case does not qualify as "unreasonably dangerous." It is conceivable

31

that one could traverse the stairs and not fall at all, just as Plaintiff did for almost six years previously.

      **b.**    **The alleged danger was not effectively unavoidable**

That leaves an argument that the hazard Plaintiff faced was effectively unavoidable.

In *Hoffner*, the Michigan Supreme Court explained that "[u]navoidability is characterized by an *inability to be avoided*, an *inescapable* result, or the *inevitability* of a given outcome." *Hoffner*, 492 Mich. at 468 (emphases in original). The court explained that "[a]n 'effectively unavoidable' hazard must truly be, for all practical purposes, one that a person is *required* to confront under the circumstances" *id.* at 469 (emphasis added), and the court emphasized that "exceptions to the open and obvious doctrine are *narrow* and designed to permit liability for such dangers only in *limited* extreme situations." *Id.* at 472 (emphases in original). So "situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Id*. at 469 (emphasis in original).

Plaintiff here contends, without any further elaboration, that a special aspect exists because the stairs provided the only access to her apartment. (Pl.'s Resp. at PageID.376.) However, the alleged hazard – the unevenness of the steps – apparently was effectively *avoidable* because Plaintiff had managed to go up and down those

same steps, with the same alleged hazard, for almost six years, with admittedly no incident, and thus she was able to "avoid" that danger by watching where she stepped. *Martin*, 2011 WL 6268197, at \*4 (finding that "[a]lthough plaintiff was required to traverse the *steps* several times a day, the *hazard* was not effectively unavoidable," noting that the hazard is located on the left side of the stairway and that "plaintiff has admitted to using the stairs 'several times per day' without tripping for over two years."); *Carruthers v. Haley*, No. 290707, 2010 WL 2077292, at \*2 (Mich. Ct. App. May 25, 2010) (the fact that the steps were the only way into or out of the basement alone is insufficient to state a premises liability claim, because while "the *steps* might not have been unavoidable, the harm was not, as evidence by the fact that the steps were traversed numerous times with no harm resulting"); *Romitti v. Peter W. Ryan, P.C.*, No. 284288, 2009 WL 1443239, at \*2 (Mich. Ct. Ap. May 21, 2009) (explaining that while the stairway itself was effectively unavoidable (assuming that it provided the only entrance to the room), "[t]he condition posing the danger, however, was not" because the danger could be avoided by watching where one is stepping, and the "focus is on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff *on this occasion*") (emphasis added); *Williamson v. Ford Motor Co.*, No. 250218, 2005 WL 320688, at \*4 (Mich. Ct. App. Feb. 10, 2005) (finding steps not "unavoidable"

33

even though plaintiff was required to exit the building by walking down the steps because "if [plaintiff] had looked where he was going, he would have avoided any danger"). Further, this was not an allegedly newly-created hazard – like the flooded hallway in the example given in *Lugo* or a step breaking as the plaintiff descended stairs, like in *Wagner v. Lyons-Muir Church*, No. 262496, 2005 WL 2758767, at *4 (Mich. Ct. App. Oct. 25, 2005).

Here, Plaintiff testified that she knew of the "hazards" posed by the stairs, as she has been using those steps to come and go from her apartment for over almost six years. The Court finds that Plaintiff saw that risk worth taking in order to retrieve her mail. Plaintiff has not testified that she was "forced" or "compelled" to use the steps to retrieve her mail at that time (like perhaps she would be if she had to leave to go to work at a set time or for an emergency)[5]. Plaintiff could have waited until

---

[5] *See, e.g., Estate of Livings v. Sage's Inv. Grp., LLC*, 507 Mich. 328, 408-09 (2021) (holding that "a hazard can be deemed effectively unavoidable if the plaintiff confronted it to enter his or her place of employment for purposes of work" and "[t]he bare fact that the employee could have failed to report to work as required by his or her employer is not a reasonable alternative"); *Bowman v. Walker*, --- N.W.2d ---, No. 355561, 2022 WL 413925, at *3-4 (Mich. Ct. App. Feb. 10, 2022) (finding genuine issue of material fact existed as to whether condition (snow-covered ice in front of front and back doors of tenant's residence) was effectively unavoidable when she was *required* to leave her home to go to work); *Clapper v. HVM, L.L.C.*, No. 06-10093, 2007 WL 436126, at *7 (E.D. Mich. Feb. 6, 2007) (finding that "the unique circumstances of this case," where plaintiff had "no choice" but to descend the darkened stairway to exit the hotel in order to check out and attend her doctor's

daylight to retrieve her mail and descended the steps as she has every day. *See, e.g.,*
*Hoffner*, 492 Mich. at 469, 473 (holding that a slippery sidewalk in front of a fitness
center was not effectively unavoidable because, although there was no alternative
route to enter the building, the plaintiff nevertheless had a choice as to whether she
would confront the hazard); *Faustina v. Town Ctr.*, No. 311385, 2014 WL 3887191,
at *4 (Mich. Ct. App. Aug. 7, 2014) (finding debris left on stairs, which caused
plaintiff to fall, was open and obvious and did not fall within the "special aspects"
exception because "[w]hile the stairs were the only way for plaintiff to access the
laundry facilities, she could have simply chosen not to confront that open and
obvious danger" and the "open and obvious danger could have been avoided through
the use of precautions by plaintiff"); *Joyce*, 249 Mich. App. at 242 (finding that the
slippery walkway on which the plaintiff fell was not effectively unavoidable since
she could have visited the defendants' home another day); *Evola v. Henry Ford*
*Macomb Hosp.*, No. 20-2241, 2021 WL 4622397, at *3 (Mich. Ct. App. Oct. 7,
2021) (finding alleged hazard – wet hallway floor – was not "effectively
unavoidable," even though plaintiff testified there was no other route to take to get
to her mother's hospital room, because "she could have returned to the elevators and

---

appointment, that the condition of the stairs, while open and obvious, had special
aspects because it was "effectively unavoidable").

sought assistance from hospital staff on the first floor" or waited for the floor to dry and that the plaintiff "must show that traversing the wet floor *at that time* was 'inescapable'") (emphasis added).

Thus, the common condition of the steps in this case was neither remarkable nor unavoidable and does not represent the kind of "uniquely dangerous" condition that would warrant removing this case from the open and obvious danger doctrine, particularly when Plaintiff clearly appreciated the risk and, nevertheless, chose to encounter the condition to retrieve her mail.

Accordingly, Plaintiff's premises liability claim fails as a matter of law, and Defendants are entitled to summary judgment.[6]

/

/

/

/

/

---

[6] Because the Court finds that Plaintiff's premises liability claim against all Defendants fails as a matter of law and will be dismissed, the Court need not address Defendants' final argument in their motion for summary judgment that individual Defendants Joseph Kott and Kathleen Kott are not liable to Plaintiff because they claim they are not the owners of the subject premises.

## IV.  CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion for summary judgment (ECF No. 23) and DISMISSES Plaintiff's premises liability claim WITH PREJUDICE.

This Opinion and Order closes the case.


**IT IS SO ORDERED.**


Dated: May 16, 2022                           s/Paul D. Borman
                                              Paul D. Borman
                                              United States District Judge